United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>RUSSELL MCCLOUD,<br>　　　　Defendant. | Case No. 4:17-cr-00025-JD-1<br><br>**ORDER RE MOTION TO SUPPRESS**<br>Re: Dkt. No. 21 |

Defendant Russell McCloud moves to suppress evidence obtained at a traffic stop and search of his car. Dkt. No. 21. The Court heard argument on the motion to suppress with the defendant present in court. Dkt. No. 33. The facts germane to the motion are not in dispute, and McCloud has not requested an evidentiary hearing. Body camera footage of the November 2016 stop, recordings of the dispatch radio traffic, and a Computer Aided Dispatch log have been made available to all parties. *See* Dkt. Nos. 24-1, 24-2, 24-3. The motion is denied.

**BACKGROUND**

On the afternoon of November 30, 2016, officers from the Alameda County Sheriff's Office were investigating an armed robbery at 7906 MacArthur Boulevard in Oakland. *See generally* Dkt. Nos. 24-2, 24-3. The officers were in uniform and driving an unmarked car. They believed one suspect to be an African-American male with short hair driving a dark BMW. As the officers began exiting the driveway at 7906 MacArthur, a black BMW driven by an African-American man with a bald head pulled in. The officers checked the BMW's front license plate and found that its registration had expired. The driver reversed out after seeing the officers' car, drove forward, and U-turned on MacArthur without signaling. The officers followed and pulled the BMW over for traffic violations. *See* Cal. Veh. Code § 4000(a) (registration); Cal. Veh. Code § 22107 (turn signaling).

The officers approached and asked the driver for identification and a license. A marijuana cigarette was in plain view on the center console. The driver identified himself as Russell McCloud. McCloud said he did not have a driver's license on him and that it had been suspended. One of the officers did a records check of McCloud by radio. Dispatch advised that McCloud was on probation for a violation of California Penal Code Section 29800(a) (unlawful possession of firearm), was subject to "S7," and was on post-release community supervision ("PRCS"). The officers knew from experience that S7 referred to a standard condition of probation authorizing warrantless searches of McCloud's vehicle, residence, person, and any other property in his control. They also understood that as a person on PRCS, McCloud was subject to a mandatory search condition permitting warrantless searches of a person, his residence, and his possessions. *See* Cal. Penal Code Section 3453(f). When the officers asked dispatch about the underlying PRCS offense, dispatch responded that that information was not available. At this point, McCloud had been detained for approximately four minutes.

After finishing McCloud's records check, the officers searched McCloud's person and car. In the trunk of the BMW, they located a brown backpack containing a loaded .40 caliber Glock 27 handgun. McCloud was indicted in the Northern District of California on one count of felon in possession of a firearm and ammunition, 18 U.S. Code Section 922(g)(1). Dkt. No. 1. McCloud now moves to suppress the evidence recovered in the November 2016 search, contending that the officers' search of his vehicle was an unlawful prolongation of the traffic stop and that his probation search condition did not authorize suspicionless searches.

**DISCUSSION**

"[I]n general, 'the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' -- to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the

2

traffic infraction are -- or reasonably should have been -- completed." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (internal quotations and citations omitted). In the ordinary course, an officer's "mission" during a traffic stop includes checking the driver's license, determining whether the driver is subject to any outstanding warrants, inspecting the car's registration and proof of insurance, and deciding whether to issue a traffic ticket. *Id.* at 1615. In contrast, measures are "not fairly characterized as part of the officer's mission" if they lack a "close connection to roadway safety" and are instead targeted towards "'detect[ing] evidence of ordinary criminal wrongdoing.'" *Id.* (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40-41 (2000)) (modification in original). In *Rodriguez*, the Supreme Court found that a dog sniff for drugs is not an ordinary incident of a traffic stop, and a traffic stop may not be prolonged to conduct a dog sniff absent reasonable suspicion of wrongdoing. *Id.* at 1616.

Since *Rodriguez*, the Ninth Circuit has held that an ex-felon registration check, like a dog sniff for drugs, is "wholly unrelated to . . . the 'mission' of 'ensuring that vehicles on the road are operated safely and responsibly.'" *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015) (quoting *Rodriguez*, 135 S. Ct. at 1615). An officer may prolong a traffic stop by running an ex-felon registration check "if the prolongation itself is supported by independent reasonable suspicion. Reasonable suspicion 'exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion.'" *Id.* at 788 (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc)).

McCloud says that the record check fell outside the ordinary scope of a traffic stop. But even if that is taken as true, an officer may prolong a traffic stop to seek "evidence of ordinary criminal wrongdoing" upon independent reasonable suspicion. *Rodriguez*, 135 S. Ct. at 1615. The motion to suppress does not address whether the officers had independent reasonable suspicion to run a records check. The government argues that independent reasonable suspicion did support the records check, and McCloud neither filed a reply brief nor responded to that point at the hearing on the motion to suppress.

3

"The reasonable-suspicion standard is not a particularly high threshold to reach. 'Although . . . a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). The relevant facts as provided by the officers' declarations and supporting audio and video recordings have not been disputed by McCloud, and they show that the officers in this case had reasonable suspicion to run a records check. McCloud and his black BMW matched a description of a suspect in the armed robbery case that the officers were investigating. He backed out of the driveway at the robbery site after seeing the uniformed police officers, drove away, and then took a U-turn without signaling. The officers reasonably viewed that behavior as evasive, since McCloud could simply have backed out to let the police officers drive out and then turned in after the police officers left. These circumstances formed a "particularized and objective basis" for the officers' suspicions. *United States v. Rodriguez*, 976 F.2d 592, 595-96 (9th Cir. 1992), *opinion amended on denial of reh'g*, 997 F.2d 1306 (9th Cir. 1993).

McCloud also says that the officers' search of the BMW pursuant to McCloud's probation search condition was unreasonable. McCloud's probation agreement states that he will "[s]ubmit to search and seizure by any . . . law enforcement officer at any time of the day or night with or without a search warrant, including: vehicle, residence, person or any other property under your control." Dkt. No. 24-1 at ECF p. 42. The "California Supreme Court 'has construed a warrantless search condition to be tantamount to a suspicionless search condition.'" *United States v. Miller*, No. 4:15-CR-00197-JD-1, 2016 WL 80565, at *2 (N.D. Cal. Jan. 7, 2016) (citing *People v. Douglas*, 240 Cal. App. 4th 855, 864 n.7 (Cal. Ct. App. 2015)), *aff'd*, 694 F. App'x 609 (9th Cir. 2017). It is an open question in our circuit whether officers may conduct a suspicionless search pursuant to a suspicionless search condition in a non-violent felon's probation agreement. *See United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013). In contrast, if "an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the

4

probationer's significantly diminished privacy interests is reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). Where reasonable suspicion of criminal wrongdoing exists, a warrantless search pursuant to a probation search condition is constitutionally sound. *Id.*

The Court need not reach the open question noted in *King*, since the undisputed facts show that the search of McCloud's car pursuant to his probation search condition was triggered by reasonable suspicion of criminal activity. McCloud matched the description of a suspect in the robbery at 3906 MacArthur, was driving into the site of the robbery, and apparently tried to evade the police officers after spotting them. During the traffic stop, the officers additionally learned that McCloud was driving without a license, observed a marijuana cigarette on the console next to McCloud, and conducted a records check that revealed McCloud was on probation for illegal firearm possession. In light of these factors, the officers' ensuing search of the car pursuant to McCloud's search condition was reasonable under the Fourth Amendment. *Id.* at 120-21 (probationer subject to search condition has "significantly diminished" expectation of privacy, while government interest in preventing crime may "justifiably focus on probationers"). It bears repeating that McCloud's motion to suppress is silent on whether the officers had reasonable suspicion of wrongdoing. The government's opposition brief raises that point, but as stated McCloud did not file a reply and again did not address this argument at the hearing.

That is enough to deny suppression, but it is also worth noting that the officers reasonably relied on dispatch's report that McCloud was a parolee subject to a statutory suspicionless search condition. Again, this issue was briefed by the government and McCloud did not respond by filing a reply brief or by raising any substantive points at the motion hearing.

Dispatch told the officers that McCloud was on PRCS. PRCS was implemented as part of the 2011 Realignment Act addressing public safety and "provides for local post-incarceration supervision of less serious offenders by a county department rather than the state parole authorities. . . . For each PRCS participant, '[t]he person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer.'" *Miller*, 2016 WL 80565, at *2 (quoting Cal. Penal Code § 3453(f)). California courts treat "PRCS as comparable to parole rather than

probation. . . . [T]he United States Supreme Court and the California Supreme Court have found that parole is akin to imprisonment and 'parolees have fewer expectations of privacy than probationers.' . . . . Suspicionless searches of parolees are lawful so long as they are not conducted arbitrarily, capriciously or for harassment." *Id.* (quoting *Samson v. California*, 547 U.S. 843, 850 (2006) and citing *Douglas*, 240 Cal. App. 4th at 861).

Although the officers were mistaken -- McCloud correctly stated during the traffic stop that he was not on PRCS -- the record indicates that their reliance on the dispatcher's report was objectively reasonable. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [Exclusion] serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). None of the facts before the Court indicate that the dispatcher's error about PRCS was grossly negligent or the result of systemic negligence. Nor does McCloud argue that it was unreasonable for the officers to take dispatch's word over his. The officers' objectively reasonable belief that McCloud was a parolee subject to a suspicionless search condition is an alternative sufficient reason to deny the suppression motion.

## CONCLUSION

The motion to suppress is **DENIED.**

**IT IS SO ORDERED.**

Dated: June 15, 2018

JAMES DONATO
United States District Judge