UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL MCCLOUD,<br><br>Defendant. | Case No. 17-cr-00025-JD-1<br><br>**ORDER RE AMENDED SECTION 2255 PETITITON AND CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 92 |

Russell McCloud is serving a 65-month sentence in federal custody after pleading guilty to one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Section 922(g)(1)). Dkt. No. 55. The length of his sentence was due primarily to a criminal history score that resulted in a federal sentencing guidelines criminal history category of VI. While in custody, McCloud filed two motions for compassionate release. The first was denied because he did not demonstrate an elevated medical risk from COVID-19, and the second was denied for similar reasons, and because McCloud was offered and declined vaccination against the virus. *See* Dkt. Nos. 116, 131.

This order resolves McCloud's amended motion to set aside his sentence under 28 U.S.C. § 2255 (Section 2255), which allows federal prisoners to file a motion to vacate or correct a sentence imposed in violation of the Constitution or the laws of the United States, among other grounds. Dkt. No. 92. The motion is suitable for decision without oral argument, and is denied.[1]

---

[1] The government's unopposed request to file an oversized brief, Dkt. No. 104, is granted.

## BACKGROUND

As discussed in detail in the Court's Order re Motion to Suppress, Dkt. No. 40, McCloud was indicted for violating Section 922(g)(1) after police officers found a .40 caliber Glock 27 handgun in his car during a traffic stop. The stop was initiated after the officers observed McCloud driving an unregistered vehicle in violation of Cal. Veh. Code § 4000(a) and turning without signaling in violation of Cal. Veh. Code § 22107. The officers said they were in the area to investigate an armed robbery that had taken place nearby, and that McCloud roughly matched the description of the suspect. They searched McCloud and his vehicle after being told that McCloud was on post-release community supervision (PRCS) and subject to warrantless searches as a condition of probation. McCloud moved to suppress evidence obtained from the search, and the Court denied the motion after a non-evidentiary hearing.

McCloud pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (c)(1)(B). Dkt. No. 52. Among other terms of the agreement, McCloud admitted that he knowingly possessed a firearm and ammunition and that he had previously been convicted of a felony. *Id.* ¶ 2. He also waived his right to appeal his conviction or collaterally attack it under Section 2255. *Id.* ¶¶ 4-5. McCloud preserved only the right to challenge his conviction on the grounds that his counsel was ineffective. *Id.* McCloud also agreed that under the advisory federal sentencing guidelines, he should be sentenced according to a base offense level of 20 and an adjusted offense level of 17. *Id.* ¶ 7. The parties did not reach an agreement on McCloud's criminal history category. *Id.* For its part, the government promised "to recommend a sentence at the low end of the range" associated with these numbers. *Id.* ¶ 15. After a hearing, the Court determined that McCloud's plea was "knowing and voluntary," and adjudged him "guilty of the offense." Dkt. No. 55.

The United States Probation Office (Probation) prepared a presentence report that recommended an 86-month custodial sentence, Dkt. 59, and later amended the report with minimal substantive changes, *see* Dkt. No. 71.[2] While the parties had recommended that McCloud be

---

[2] The main impetus for issuing an amended presentence report seems to have been an error in the original concerning whether McCloud was in continuous federal custody before his sentence. *See*

sentenced based on an adjusted offense level of 17, the presentence report calculated the total offense level to be 21. Dkt. No. 71 ¶ 26. Based on McCloud's substantial criminal history, Probation determined that his criminal history category was VI, *id.* ¶ 41, which resulted in a guidelines sentencing range of 77-96 months of imprisonment, *id.* ¶ 71. In pre-sentencing memoranda, both parties acknowledged that they had made a mistake in applying the sentencing guidelines, and that Probation's calculations were correct. *See* Dkt. No. 60 at 2; Dkt. No. 66 at 2.

Despite the mistake, the government stated in its brief that it would stand by the "agreed-upon recommendation" in the plea agreement. Dkt. No. 60 at 2. The parties correctly noted that if McCloud were sentenced based on an adjusted offense level of 17 and a criminal history category of VI, the lower end of the guidelines range would be 51 months of imprisonment. *See* Dkt. No. 60 at 2; Dkt. No. 66 at 2. Consequently, "as dictated by the terms of the plea agreement," the government recommended that McCloud be imprisoned for this length of time. Dkt. No. 60 at 2.

At the sentencing hearing, the Court calculated the applicable sentencing guidelines range on the record, reaching the same results as Probation. *See* Dkt. No. 83 at 4-6. The government continued to advocate for a 51-month sentence regardless. *See id.* at 16-18. Probation suggested that a significantly longer prison term was warranted due to McCloud's criminal history, and stated that his relatively "good upbringing" weighed in favor of a longer sentence. *Id.* at 20. After considering the relevant factors in 18 U.S.C. § 3553(a), the Court sentenced McCloud to "65 months in custody, 3 years of supervised release, a $100 special assessment, a $10,000 fine, and forfeiture of the property described in the plea agreement." Dkt. No. 70 (minutes); *see also* Dkt. No. 72 (judgment).

Four months later, McCloud filed a pro se motion to vacate his sentence under Section 2255. Dkt. No. 73. As relevant here, the motion was based *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that the government must prove beyond a reasonable doubt that a

---

Dkt. No. 83 at 3 (sentencing transcript); *compare* Dkt. No. 59 at ECF p. 23 (original report, stating "defendant has been in continuous federal custody"), *with* Dkt. No. 71 at ECF p. 23 (amended report, stating "defendant has been under pretrial supervision"). Because the original and amended presentence reports contain no other differences that are material here, the Court refers only to the amended report in the remainder of this order.

3

defendant charged with possessing a firearm in violation of 18 U.S.C. § 922(g) "knows of his status as a person barred from possessing a firearm." *Id.* at 2195.[3]

The Court referred McCloud's pro se motion to the federal public defender with an order appointing it as counsel for the limited purpose of representing defendants collaterally attacking their sentences based on *Rehaif*. Dkt. No. 74. Mirroring the language of this order, counsel from the public defender's office appeared on McCloud's behalf "for the limited purpose of seeking relief on behalf of the defendant under 28 U.S.C. § 2255 . . . in light of *Rehaif v. United States* . . . and to present any petitions, motions or applications relating thereto to the Court for disposition." Dkt. No. 75. Counsel was permitted to file an amended Section 2255 petition. Dkt. No. 81.

Counsel then asked for discovery relating to the robbery referenced in the suppression order. Dkt. No. 84. At a discovery hearing, the Court determined that discovery was premature, and underscored that McCloud's plea agreement limited him to "claims of ineffective assistance of counsel" for Section 2255 purposes. Dkt. No. 90 (minutes). The Court did not expand the scope of counsel's appointment at the hearing. *See* Dkt. No. 96 at 5.

Shortly after the hearing, counsel filed the amended Section 2255 motion. Dkt. No. 92. A considerable portion of the 28-page amended petition is devoted to claims that are not based on either *Rehaif* or ineffective assistance of counsel. The petition urges the Court to grant relief based on (1) the government's failure to turn over information relevant to the suppression proceedings pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) the government's discussion of McCloud's criminal history and other problematic behavior during sentencing proceedings, which is said to have breached the plea agreement. The petition frames these arguments as freestanding claims, and as derivative ineffective assistance of counsel claims. The discussion of McCloud's *Rehaif* claim runs for only approximately one and a half pages.

---

[3] The motion also mentioned *United States v. Davis*, 139 S. Ct. 2319 (2019), which held that language in 18 U.S.C. § 924(c)(3)(B) threatening "long prison sentences for anyone who uses a firearm in connection with certain other federal crimes" was "unconstitutionally vague." *Id.* at 2323-24. McCloud's amended Section 2255 petition does not raise any claims based on this case, and *Davis* bears no apparent relevance to him, so further discussion of it is unnecessary.

**DISCUSSION**

At the outset of these post-conviction proceedings, McCloud's counsel was not authorized to bring the freestanding *Brady* and breach-of-plea-agreement claims, which are distinct from McCloud's ineffective assistance of counsel arguments and unrelated to *Rehaif*. Both the order appointing counsel and counsel's own representations to the Court unambiguously stated that the scope of the representation was limited to *Rehaif* claims. *See* Dkt. Nos. 74, 75. The Court indicated that it would consider any ineffective assistance claims, but this was not an invitation to repackage unrelated arguments in the wrapping of an ineffectiveness claim. McCloud does not have an unqualified right to appointed counsel in post-conviction proceedings. *See* 18 U.S.C. § 3006A(a)(2)(B) (counsel "may be provided" in Section 2255 proceedings if "the interests of justice so require"); *United States v. Townsend*, 98 F.3d 510, 512 (9th Cir. 1996) (appointed counsel is not mandatory in Section 2255 proceedings unless an evidentiary hearing is required). Consequently, the Court could properly strike or dismiss all the claims that were not within the scope of counsel's appointment, as the government suggests. *See* Dkt. No. 105 at 5. Even so, in the interests of justice and an efficient resolution of McCloud's post-conviction claims, the Court will substantively address all of the claims in the amended petition.

Overall, McCloud has not established any legal error or default by his counsel that prejudiced him to such a degree that collateral review might be warranted. He also has not shown a basis for relief under *Rehaif*. Consequently, the petition is denied.

**I.      LEGAL STANDARDS**

Had McCloud appealed his conviction directly, he would have been required to show "a reasonable probability" that he would not have pleaded guilty but for some legal error. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). However, to prevail on a Section 2255 motion, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also United States v. Timmreck*, 441 U.S. 780, 784 (1979) (noting that collateral attacks on guilty pleas are strongly disfavored due to finality concerns). To set aside a conviction, a petitioner typically must show that a constitutional error had "a substantial and injurious effect or influence" on the proceedings. *Brecht v.*

5

*Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht*'s harmless error standard applies to habeas cases under section 2255"). There is also a "general rule that claims not raised on direct appeal" are procedurally defaulted, meaning that they "may not be raised on collateral review unless the petitioner shows cause and prejudice," although this rule does not apply to ineffective assistance of counsel claims. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Absent this showing, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (applying cause and prejudice standard).

To prevail on an ineffective assistance claims, McCloud needs to show (1) that his representation fell below objectively "reasonabl[e] effective assistance," and (2) a reasonable probability that the result was prejudiced by counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (*Strickland* applies to claims of ineffective assistance of counsel during guilty plea). Deficient performance requires a demonstration that McCloud's lawyers made mistakes so serious that they could not be said to be acting like an attorney guaranteed by the Sixth Amendment. *Id.* at 687. The inquiry is not what counsel might have done, but whether their actual choices were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). These are high standards, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The *Strickland* prejudice analysis is complete in itself, and so there is no need for a harmless error review under *Brecht*. *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

## II. THE PLEA AGREEMENT AND THE *BRADY* CLAIMS

McCloud's amended petition largely takes aim at perceived issues with his plea agreement. This approach is ostensibly an effort to get around the waiver in the plea agreement of a collateral attack on grounds other than ineffective assistance of counsel. McCloud has not adduced a good reason for the Court to set aside this waiver, which is enough in itself to deny all of the claims outside ineffective assistance.

Plea agreements "are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009). Consequently, a criminal defendant may agree to "waive his right to appeal, along with a number of other rights, in exchange for a lower sentence." *United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016). These waivers are enforceable so long as the they were made knowingly and voluntarily, irrespective of whether the claims waived by the defendant may have been meritorious on appeal or otherwise. *See id.* at 462-63 (quoting *United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000)); *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000). McCloud expressly stated in his plea agreement that he fully understood the agreement, that his plea was knowing and voluntary, and that he had had time to discuss the plea with his attorney. Dkt. No. 52 ¶¶ 17-19. The Court held a hearing to confirm that these statements were true before accepting the plea, and devoted substantial time and effort to questioning McCloud to ensure that his decisions were knowing and voluntary. *See generally* Dkt. No. 80 (transcript). Among other questions, the Court asked McCloud if he understood that he was giving up his right to collaterally attack his sentence, and if he had discussed that waiver with his attorney. *Id.* at 12. McCloud answered "yes" to both questions. *Id.* Because McCloud's responses as a whole indicated that he was making an informed and independent decision to plead guilty, the Court found that his plea was "knowing and voluntary." Dkt. No. 55.

McCloud's main argument against this is that a *Brady* violation rendered his plea involuntary. The point is not well taken.

To establish a *Brady* claim, a defendant must show that the government suppressed evidence that was favorable to him, either because it was exculpatory or because it was impeachment material, and that this resulted in prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). This requires the defendant to demonstrate that there is a reasonable probability that the outcome of the proceeding would have been different had the government not withheld the evidence. *Id.* at 280.

McCloud tries to meet these standards by alleging that the government withheld reports indicating that the robbery the officers said they were investigating when McCloud was stopped actually occurred three months earlier at a location seven miles away. Dkt. No. 92 at 7-8. The

7

reports had the name, license plate, and photo of the suspect, who was not McCloud. *Id.* at 7-8. This is said to negate the Court's statements in the suppression order that the officers had reasonable suspicion to prolong the traffic stop to investigate whether McCloud was involved in criminal activity. *See* Dkt. No. 40 (suppression order) at 3-4.

Even taking this argument as true for present purposes, it is irrelevant to the question of whether McCloud's plea was involuntary. Although the Ninth Circuit has held that "a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim," *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995), the Supreme Court subsequently concluded that a prosecutor's failure to disclose impeachment materials does not vitiate the voluntariness of a guilty plea. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). This holding governs here. The robbery reports were not exculpatory because the information they contained was irrelevant to McCloud's guilt or innocence. *See United States v. Barton*, 995 F.2d 931, 934 (9th Cir. 1993). At most, they would have impeached the arresting officers' testimony and negated one basis for stopping McCloud's vehicle. Consequently, under *Ruiz*, it follows that McCloud's plea was voluntary regardless of the government's alleged *Brady* violation.

McCloud also has failed to show that he was prejudiced by the withholding of the robbery report, which forecloses the freestanding *Brady* claim and the derivative ineffective assistance of counsel claim. McCloud suggests that there is a good chance the Court may have suppressed evidence from the traffic stop had it known of the robbery reports. This misconstrues the record. The prior robbery was by no means the sole basis of the suppression order. As the Court stated in the order, McCloud was pulled after the officers observed him driving with an expired registration in violation of Cal. Veh. Code § 4000(a), and for turning without signaling in violation of Cal. Veh. Code § 22107. Dkt. No. 40 at 1. There is no question that this was, in itself, enough to initiate a traffic stop. *See, e.g.*, *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (traffic stop permissible when officers have "at least reasonable suspicion" of a traffic violation). At that point, the officers were authorized to detain McCloud for as long as necessary to investigate the traffic violations. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009). During the stop, McCloud freely admitted that he was driving without a license in violation of Cal. Veh. Code § 12500(a),

and that he was on probation for violating Cal. Penal Code § 29800(a) (unlawful possession of a firearm). *See* Dkt. No. 40 at 2. Nothing prohibited the officers from continuing the traffic stop to investigate these facts.

McCloud suggests that the officers impermissibly extended the stop by running a records check on him. He relies principally on *United States v. Landeros*, 913 F.3d 862 (9th Cir. 2019), which in turn relied on *Rodriguez v. United States*, 575 U.S. 348 (2015). These cases "turned on the principle that a stop to investigate a traffic infraction may last no longer than is necessary to effectuate that purpose, and attend to the officer's safety. Authority for the seizure ends when the tasks related to the traffic infraction have been completed, or reasonably should have been completed. A stop may be prolonged after that point to investigate other conduct, but only if further detention is supported by reasonable suspicion of a crime independent of the basis for the stop." *United States v. Crenshaw*, No. 20-CR-00015-JD-1, 2020 WL 6873422, at *3 (N.D. Cal. Nov. 23, 2020) (citations omitted).

Even so, it is perfectly legitimate for officers to run a record and warrants check on the driver of a car during a traffic stop even without suspicion of criminal activity. *See Rodriguez*, 575 U.S. at 355 (typical inquiries in a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"). *Rodriguez* concluded that officers may pursue "unrelated checks" during a traffic stop so long as they "do not measurably extend the duration of the stop." *Id.* (quoting *Arizona*, 555 U.S. at 333). The officers in *Rodriguez* asked a passenger for his identification, questioned him about the reasons for being in the car, and ran a records check on him after doing the same for the driver. *Id.* at 351. The Supreme Court had no problem with this conduct because it did not unreasonably extend the stop beyond the bounds of the traffic violation. *Rodriguez* cited several other decisions that reached similar conclusions. *See, e.g.*, *Arizona*, 555 U.S. at 333 ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter" into an unlawful seizure "so long as those inquiries do not measurably extend the duration of the stop").

McCloud says it was wrong for the officers to even ask him about whether he was on probation or parole. That is a doubtful proposition that McCloud does not adequately support with case law. That is all the more true here, where the officers did not prolong an otherwise lawful traffic stop by repeatedly demanding irrelevant information; they simply asked McCloud a question, and he chose to answer it. *See Crenshaw*, 2020 WL 6873422, at *4 (citing *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007)). The officers' brief question about McCloud's probation status also had no measurable impact on the length of the stop, and, like a check for outstanding warrants, was justifiable as a "negligibly burdensome" safety precaution. *Rodriguez*, 575 U.S. at 356.

After the records check, the officers were told (incorrectly, as it later turned out) that McCloud was on post-release community supervision (PRCS). Dkt. No. 40 at 2. As the Court explained in its suppression order, the officers' good-faith, reasonable belief that McCloud was on PRCS supplied a basis for lawfully searching him and his vehicle independent of whether he was engaged in criminal activity. Dkt. No. 40 at 5-6. No information in the robbery reports could plausibly have altered this result.

Consequently, there is no basis to think that the suppression proceedings would have ended differently had the robbery reports been disclosed. For the same reason, there is no reason to conclude that McCloud's decision to plead guilty would have been influenced by the disclosure of the robbery reports. McCloud's freestanding *Brady* claim and the derivative ineffective assistance claim both fail as a result.

### III. THE BREACH OF PLEA AGREEMENT CLAIMS

While breach-of-plea-agreement claims may be raised under Section 2255, *see United States v. De la Fuente*, 8 F.3d 1333, 1336-37 (9th Cir. 1993), a breach by the government does not "retroactively" cause the agreement to be "unknowing or involuntary," *Puckett*, 556 U.S. at 137. McCloud's claim that the government breached the plea agreement is encompassed by the plain language of his collateral attack waiver, which is enough reason to deny it. As with his *Brady* claim, it is also both substantively meritless and procedurally defaulted for lack of prejudice.

McCloud says the government breached its promise to advocate for a sentence based on the parties' incorrect guidelines calculations, which would have resulted in a 51-month term of imprisonment had the Court accepted a recommendation based on the terms of the plea agreement. But the government did recommend a 51-month sentence in its sentencing brief even after Probation pointed out that the parties' plea-agreement calculations were wrong, and continued to recommend this sentence at the sentencing hearing after the Court confirmed the mistake. *See* Dkt. No. 60 at 2; Dkt. No. 83 at 17-18. The government kept its promise, which distinguishes the first of two cases that McCloud relies on for this contention. *See* Dkt. No. 92 at 24 (discussing *United States v. Manzo*, 675 F.3d 1204 (9th Cir. 2012)).

McCloud also says that the government was in effect talking out of both sides of its mouth, formally recommending a 51-month sentence while exclusively making arguments that would encourage the Court to impose a much longer sentence. For this point, he relies on *United States v. Heredia*, 768 F.3d 1220 (9th Cir. 2014), which held that the government breached a plea agreement by failing to direct the sentencing court to any "mitigating information at all" in support of the relatively lenient custodial sentence it recommended while simultaneously "call[ing] special attention to the ugliest aspects" of the defendant's criminal history. *Id.* at 1234.

*Heredia* is inapposite. As the circuit noted, the government "is under no obligation to make an agreed-upon recommendation 'enthusiastically,'" and implicitly breaches a plea agreement only if it "superficially abide[s] by its promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one." *Id.* at 1231 (quoting *United States v. Johnson*, 187 F.3d 1129, 1135 (9th Cir. 1999)). The record shows that did not happen here.

To put a finer point on this, the government's sentencing memorandum unequivocally recommended a 51-month custodial sentence, asserting that even though "[t]he recommended custodial sentence is below the applicable Guidelines range . . . that sentence is an appropriate one based on the factors set forth in [18 U.S.C. §] 3553(a)." Dkt. No. 60 at 5-6. The government did not say or do anything at the hearing to undercut this recommendation.

McCloud objects to the government's discussion of his criminal history, but that was perfectly appropriate in a sentencing memorandum, especially when, as here, the parties had not agreed on a criminal history score or category. *See* Dkt. No. 52 ¶ 7. McCloud's suggestion that the government used "inflammatory" language is an unfair characterization of the record. It was undisputed that McCloud had a criminal history category of VI, which is the highest category in the sentencing guidelines. The presentence report recommended an 86-month sentence based largely on McCloud's extensive past criminal activity, which included past convictions for aiding and abetting an armed robbery, illegal firearm possession, narcotics trafficking, and evading a peace officer. *See* Dkt. No. 71 at ECF pp. 8-12, 22. It also noted that McCloud "was on state probation" at the time of his arrest, and was found with a "loaded Glock handgun," "a total of six cellular phones, two glass containers with marijuana in them, and a package that contained vacuum-sealed bags that in turn contained Vogue magazines with almost $30,000 of cash stuffed in between their pages." Dkt. No. 71 at ECF p. 22.

Consequently, the government was fairly circumspect when said in its memorandum that "Mr. McCloud unquestionably has a lengthy criminal history, and his continued criminal conduct, including repeated instances of gun possession, is of serious concern to the government." Dkt. No. 60 at 5-6. The government could hardly have avoided the topic entirely, as McCloud would have it, and certainly did not go overboard in addressing it.

The government stuck with its recommendation at the sentencing hearing. It reiterated the recommendation in light of McCloud's acceptance of responsibility and expression of remorse. *See* Dkt. No. 60 at 6; Dkt. No. 83 at 17. The government also contended that a longer term of imprisonment was not necessary to deter future criminal conduct, which is an important sentencing consideration. *See* Dkt. No. 60 at 6; 18 U.S.C. § 3553(a)(2)(B) (deterrence is a goal of sentencing). The parties agreed to recommend an expanded search condition in the plea agreement, *see* Dkt. No. 52 ¶ 8, and both parties' sentencing memoranda independently recommended a three-year supervised release term, *see* Dkt. No. 60 at 2; Dkt. No. 66 at 9. Along these lines, the government argued that "if Mr. McCloud's imprisonment is followed by the maximum possible term of supervised release, three years, including the expanded search

12

condition agreed upon by the parties, that period of federal supervision may allow him to receive the intensive oversight, accountability, and resources he needs to stop offending in the future." Dkt. No. 60 at 6; *see also* 18 U.S.C. § 3553(a)(2)(A), (C) (sentence should "promote respect for the law" and "protect the public from further crimes of the defendant"). The government also said that a $10,000 fine would provide additional deterrent value obviating the need for a longer prison sentence, noting that "Mr. Cloud's reported employment status and his ability to hire private counsel" made it likely that he had the ability to pay. Dkt. No. 60 at 6.

Consequently, unlike in *Heredia*, the government made a meaningful effort to justify its recommendation of a shorter prison sentence, so it cannot be said to have "breached the plea agreement by implicitly recommending a higher sentence than agreed upon." *Heredia*, 768 F.3d at 1232-33. To the extent it gave attention to less positive aspects of McCloud's criminal history and pretrial release conduct, this was largely cabined in a short discussion in the memorandum arguing that McCloud should be immediately remanded to custody. *See* Dkt. No. 60 at 6-7. Remand was a disputed issue, and so the government had good reason for discussing McCloud's criminal history and pretrial release behavior. *See* Dkt. No. 66 at 6-8 (arguing that McCloud should be allowed to voluntarily surrender after meeting with his doctor); Dkt. No. 83 at 13-14 (same); *cf. Heredia*, 768 F.3d at 1233-34 (government's "routine recommendation" of a three-year supervised release term did not justify extended, "pejorative editorializing" about defendant's criminal history because the parties stipulated to the release term, and a term of this length was "a common provision" of similar pleas).

These facts are enough to deny McCloud relief on the ground of the government's conduct. It is also worth noting that McCloud would likely be barred as a matter of law from raising the government's alleged breach under Section 2255 because he did not appeal his sentence, and cannot show "actual prejudice" excusing this failure. *Frady*, 456 U.S. at 167. In prior cases, our circuit has questioned, without deciding, whether "*Frady*'s 'cause and prejudice' requirement applies to claims of government breach of an executed plea agreement." *De la Fuente*, 8 F.3d at 1336 (9th Cir. 1993). But the Supreme Court has since held that a defendant who does not raise a contemporaneous objection to the government's breach is subject to "the usual burden of showing

13

prejudice" on appeal, *Puckett*, 556 U.S. at 141, meaning that he must show that his sentence was affected, *id.* at 142 n.4. *See also United States v. Gonzalez-Aguilar*, 718 F.3d 1185, 1187 (9th Cir. 2013) (citing *Puckett* and rejecting unpreserved claim that government breached plea agreement because defendant failed to show that "inflammatory language its sentencing memorandum" regarding "prior convictions" had any effect on the outcome of the proceedings); *cf. Heredia*, 768 F.3d at 1231 n.16, 1234-35 (automatic reversal of sentence without inquiry into prejudice warranted under *Puckett* if defendant timely objects to breach before appealing). McCloud made no such objection, and so there is no good reason why he should be relieved of showing prejudice under the far more stringent standards applicable to a collateral attack under Section 2255. *See Frady*, 456 U.S. at 166; *United States v. Hayes*, No. 13-CR-00085-JD-1, 2021 WL 1391590, at \*2 (N.D. Cal. Apr. 13, 2021) (noting also that Section 2255 motions raise finality concerns not present on direct appeal).

McCloud cannot show prejudice here because it is clear that even if the government had refrained from making the statements he says are problematic, he would not have received a lighter sentence. *See Puckett*, 556 U.S. at 141-42. The Court sentenced McCloud to 65 months in prison. This was significantly below the lower bound of the properly applicable guidelines range (77 months), and much closer to the parties' recommended sentence (51 months) than to the sentence argued for by Probation in the presentence report (86 months). The Court expressly based its sentence on the presentence report's detailed findings that McCloud had a lengthy criminal history despite having a relatively stable upbringing, which distinguished him from the vast majority of criminal defendants the Court normally encountered, and that he committed the current offense while on probation for another offense. *See* Dkt. No. 83 at 22-24 (McCloud "had a good home, a stable home, a home free of domestic abuse, a home free of any child abuse, [and] a home free of violence," but still "chose[] a life of crime," and "committed this crime while he was under a criminal justice sentence"). The Court also gave McCloud's past pretrial release violations as a justification for its sentence. *See id.* at 24 (noting that McCloud's age was a mitigating factor).

14

It is true that the government mentioned these factors in parts of its sentencing memorandum. But essentially the same considerations were discussed in far greater detail in the presentence report. *See, e.g.*, Dkt. No. 71 ¶¶ 28-49, 64; *id.* at ECF pp 22-23. No prejudice can be found on these facts. *See Gonzalez-Aguilar*, 718 F.3d at 1187-88 (defendant failed to show his sentence was affected by government's allegedly improper statements because "[t]he information contained in the government's sentencing memorandum regarding [the defendant's] prior criminal convictions was already conveyed to the district court, in far greater detail, in the Initial and Revised Presentence Reports").

Consequently, McCloud's breach claim is denied. McCloud's derivative ineffective assistance claim fails for the same reasons. The fact that the government did not actually breach its plea agreement is enough to demonstrate that McCloud's counsel was not unreasonable in failing to object to the its conduct. Even if that were not the case, McCloud has failed to show that he was prejudiced by the breach, as required by *Strickland*.

## IV. THE *REHAIF* CLAIM

McCloud's *Rehaif* claim is equally unavailing. The record is abundantly clear that McCloud knew he could not possess a firearm by virtue of prior disqualifying convictions, and so the claim is foreclosed. *See Hayes*, 2021 WL 1391590, at *2-3. McCloud expressly stated in the plea agreement that he had "been convicted of multiple crimes punishable by a term of imprisonment exceeding one year," and that he received a two-year sentence for one of these crimes. Dkt. No. 52 ¶ 2. That alone is enough to reject his *Rehaif* claim. *Cf. United States v. Benamor*, 937 F.3d 1182, 1188-89 (9th Cir. 2019); *United States v. Winn*, 811 F. App'x 1011, 1015 (9th Cir. 2020) (unpublished) (defendant's stipulation to "his prior convictions 'proved beyond a reasonable doubt that [he] had the knowledge required by *Rehaif*.'" (brackets in original) (quoting *Benamor*, 937 F.3d at 1189)).

In addition, McCloud did not "dispute the accuracy of the presentence report's description of his criminal history." *United States v. Johnson*, 979 F.3d 632, 639 (9th Cir. 2020). The report shows that McCloud had eight adult felony convictions before the arrest and proceedings here, and nearly all of them carried prison sentences longer than one year. *See* Dkt. No. 71 ¶¶ 33-39. Two

of the prior convictions were for being a felon in possession of a firearm, *id.* ¶¶ 13, 38-39, which in itself is enough to "show beyond a reasonable doubt" that McCloud "had the knowledge required by *Rehaif*." *Benamor*, 937 F.3d at 1189. It is also worth noting that McCloud's conditions of probation prohibited him from possessing a firearm when he was arrested. *See* Dkt. No. 24-1 at ECF p. 42. Consequently, there is no question that McCloud knew of his status as someone barred from possessing a firearm under Section 922(g), and so any failure to instruct him on this element of the offense could not have meaningfully affected his decision to plead guilty.

McCloud says in his reply brief that *Rehaif* mandates an "automatic reversal" of his conviction "without any inquiry into prejudice" because he was convicted by a guilty plea, while the Ninth Circuit cases mentioned previously all involved jury verdicts. Dkt. No. 108 at 12 (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1905 (2017) (citations omitted)). He relies heavily on *Henderson v. Morgan*, 426 U.S. 637 (1976), which affirmed the invalidation of a conviction in habeas proceedings because the defendant was not advised that intent to kill was an element of second-degree murder before pleading guilty to that offense. *See id.* at 644-45. *Henderson* held that the defendant's plea was constitutionally involuntary even assuming that "a design to effect death would almost inevitably have been inferred" from evidence that the defendant "repeatedly stabbed" the victim, *id.* at 645, and that there was "overwhelming evidence of guilt available," *id.* at 644.

No Supreme Court or Ninth Circuit opinion indicates that a *Rehaif* error affecting the validity of a guilty plea requires automatic reversal. Nearly every court of appeals to consider the question has indicated that it does not, and that a showing of prejudice is required. *See United States v. Lavalais*, 960 F.3d 180, 187-88 (5th Cir. 2020); *United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020); *United States v. Trujillo*, 960 F.3d 1196, 1200-09 (10th Cir. 2020); *see also United States v. Watson*, 820 F. App'x 397, 400-01 (6th Cir. 2020) (unpublished); *Carlyle v. United States*, 836 F. App'x 780, 783 (11th Cir. 2020) (unpublished). The Fourth Circuit is the only outlier. *See United States v. Gary*, 954 F.3d 194, 198 (4th Cir. 2020).

McCloud also misreads *Henderson* in suggesting that it did not consider prejudice to be relevant. The defendant in that case had an "unusually low mental capacity," and the Supreme

16

Court held that this "lend[ed] at least a modicum of credibility" to his argument that he had the requisite *mens rea* only for "manslaughter rather than murder." *Henderson*, 426 U.S. at 647. This "foreclose[d] the conclusion" that failing to notify the defendant of the intent-to-kill element lacked a prejudicial effect. *Id.* Conversely, there is no suggestion here that McCloud had a comparable mental defect that would have caused him to forget that he had previously been convicted twice for being a felon in possession of a firearm, for instance, to say nothing of his other felony convictions. This type of knowledge is wholly different in kind from the mental state required for murder, namely an intent to kill. Additionally, *Henderson* emphasized that the defendant was never even formally charged with second-degree murder before pleading guilty to it, and did not "stipulate" to having the requisite intent or make any other "factual statement or admission necessarily implying that he had such intent." *Id.* at 645-46. But McCloud was formally charged with the offense he pleaded guilty to and, as discussed above, stipulated in his plea agreement to having prior felony convictions. There is no question that he knew of his status as a felon. Consequently, *Henderson* does not control here. McCloud's suggestion that he might not have pleaded guilty if he understood the government had to establish that he knew of his status as a felon lacks even a "modicum" of credibility.

## CONCLUSION

Because the amended Section 2255 petition fails to state a claim for relief, it is denied without a hearing. *See, e.g.*, *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989). With respect to an appeal, the Court finds that no reasonable jurist would disagree with the conclusion that McCloud has not made a substantial showing of the denial of a constitutional right, and so a certificate of appealability is denied. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS SO ORDERED.**

Dated: June 7, 2021

JAMES DONATO
United States District Judge